## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

STACEY WILLIAMS                                    CIVIL ACTION NO.

VERSUS                                             18-1020-EWD

MAGNOLIA CAFÉ, ET AL.

### RULING AND ORDER

Before the Court is the Second Motion to Compel Discovery, filed by Stacey Williams ("Plaintiff").[1]  Defendants Magnolia Café, Robin Marshall ("Marshall"), Skye Willis ("Willis") and Mary Daniel ("Daniel") (collectively, "Defendants") have filed an opposition memorandum.[2]  Also before the Court is the Second Motion to Compel Stacey Williams to Respond to Interrogatories and Requests for Production, filed by Defendants.[3]  For the reasons set forth below, both Motions are granted in part.[4]

## I.   Background and Procedural History

There have been several discovery motions filed in this case, and a number of telephone conferences and in-person status conferences have been held to discuss the motions and the ongoing discovery issues.  The following is a summary of the most recent discovery issues that directly gave rise to the pending motions.

In response to Plaintiff's October 31, 2019 letter to the district judge,[5] an in-person status conference was scheduled for November 21, 2019.[6]  Two days before that conference, Defendants

---

[1] R. Docs. 59 and 62 are the same Motion to Compel and are referred to in the singular.  R. Docs. 70 and 71 are filings submitted by Plaintiff that appear to be supplemental memoranda and/or replies in support of her Second Motion to Compel.

[2] R. Doc. 67.  Marshall is an owner of Magnolia Café, Willis is Marshall's daughter and an officer of Magnolia Café, and Daniels is the general manager of Magnolia Café. R. Doc. 16-1, pp. 5, 8 and R. Doc. 7, p. 1.

[3] R. Doc. 66.

[4] The parties consented to the jurisdiction of the undersigned and an order of reference was entered on May 8, 2019.  R. Docs. 23, 28.

[5] R. Doc. 46.

[6] R. Doc. 47.

filed their First Motion to Compel Plaintiff and Notice to take Plaintiff's deposition.[7]  Defendants alleged that they propounded discovery on Plaintiff in August but did not receive her responses after 43 days, and then sent Plaintiff a letter setting a discovery conference by telephone in early October that Plaintiff did not attend.[8]  Defendants ultimately learned that Plaintiff electronically filed her responses in September 2019, but still contended that Plaintiff's responses were insufficient and/or incomplete, as detailed in a deficiency letter sent to Plaintiff in early November, which set another telephone discovery conference that Plaintiff failed to attend.[9]  Similarly, the day of the November 21, 2019 status conference, Plaintiff filed her combined Amended Motion to Compel, Motion for Recusal, and Motion for a Continuance of the conference.[10]  In her Amended Motion to Compel, Plaintiff re-iterated the same allegations against Defendants asserted in her October 31, 2019 letter (*i.e.*, that Defendants had engaged in misrepresentations[11] and failed to timely answer her discovery requests).[12]

At the November 21, 2019 conference, the parties' first set of Motions to Compel were discussed.  Plaintiff stated that she had not received complete responses to her discovery requests or the subpoenas propounded to Defendants and to third parties The Bank of St. Francisville, the Louisiana Department of Revenue, and Hot Schedules, Inc.[13]  Defendants stated that they had still not received copies of all of Plaintiff's subpoenas or complete responses to Defendants' discovery requests but produced additional responsive documents to Plaintiff at the November 21, 2019 conference.  In light of the lack of communication between the parties and their failure to confer in

---

[7] R. Docs. 48-49.
[8] R. Doc. 48, p. 1; R. Doc. 66, pp. 1-2 and R. Doc. 66-3, pp. 1-8, 10.
[9] R. Doc. 48-1, p. 10 and R. Doc. 48-2, p. 2; R. Doc. 66, pp. 2-3 and R. Doc. 66-3, pp. 13-15.
[10] R. Doc. 50.
[11] Plaintiff also apparently mistakenly believed that defense counsel's setting of discovery conferences with Plaintiff, presumably to discuss discovery issues as required by Fed. R. Civ. P. 37, were attempts by Defendants to unilaterally schedule court hearings.  R. Doc. 50, p. 2.
[12] Plaintiff also requested for both judges to recuse themselves based on her belief of being treated unfairly.  Plaintiff's Motion for Recusal or alternative Motion to Withdraw Consent was denied for the reasons set forth in R. Doc. 61.
[13] The procedural and service issues with Plaintiff's subpoenas were addressed with Plaintiff at prior conferences.  *See* R. Doc. 36.

an attempt to resolve these disputes as required by Fed. R. Civ. P. 37, both Motions to Compel were terminated. Plaintiff was ordered to review the documents provided by Defendants at the November conference to see if they resolved her issues, and to provide complete copies of all subpoenas and returns of service to Defendants.  The parties were permitted to re-convene in the courtroom on January 6, 2020 to meet and confer regarding discovery and the scheduling of Plaintiff's deposition.[14]

In mid-December 2019, Plaintiff filed her Second Motion to Compel, which is currently at issue, and then re-filed it again on the morning of the parties' scheduled January 6, 2020 conference at the Court.[15]  Plaintiff also filed her "Notice/Objection to Interrogatory Responses" ("Objection"), dated December 2, 2019, objecting to the issues raised by Defendants regarding her discovery responses because, according to Plaintiff, Defendants failed to timely respond to her discovery requests.[16]

---

[14] R. Doc. 52, p. 5.  Plaintiff's request for a continuance was denied as moot because Plaintiff appeared at the conference. R. Doc. 52. Plaintiff was advised that the district judge was no longer presiding over the case due to the parties' consent to the jurisdiction of the undersigned (R. Docs. 23, 28), that Plaintiff's letters to the judges were impermissible *ex parte* communications that would not be docketed unless presented to the Clerk of Court for filing, that Plaintiff must hand-deliver or submit pleadings to the Clerk of Court by mail, and that Plaintiff must seek relief by motion.  R. Doc. 52, p. 2-5. The Court also addressed Plaintiff's alleged concerns with the Clerk of Court's office and assured Plaintiff that the Court and the Clerk's Office employees are impartial and have no personal interest in the outcome of this litigation.  R. Doc. 52, pp. 2-3.

[15] R. Docs. 59 and 62. On December 9, 2019, Plaintiff filed multiple documents into the record, including two Notices of Exhibits, which contained documents that appear to have been produced by Defendants (*e.g.*, disclosures, payroll information, insurance policy information, Hot Schedules records, and bank records from the Bank of St. Francisville), and a proposed pretrial order solely regarding Plaintiff's claims. R. Docs. 54-56.  In the proposed pretrial order, Plaintiff restated her belief that the information produced by Defendants was falsified and also requested for the Court to "request the RELEASE of documents or information from 3rd parties," *i.e.*, the third party entities previously subpoenaed R. Doc. 55, p. 1.  The proposed pretrial order also attached a letter to the Clerk of Court improperly requesting that new judges be assigned to the case, (*see* R. Doc. 55-1, p. 80) and several other documents including, for the first time, the third party subpoenas.  R. Doc. 55-1, pp. 67-71.  Also filed were several U.S. Postal Service return receipt "green cards," text messages, correspondence between the parties, notes to the Court "informing" the Court that Plaintiff required three more weeks to contact witnesses, and information from the EEOC proceedings and witness statements.  This same day, Plaintiff also filed her Request for Oaths from Defendants (R. Doc. 57), which the Court will rule upon separately.

[16] R. Doc. 58.

On January 6, 2020, the parties appeared for their discovery conference,[17] which was converted to a status conference with the Court.[18] Just before the conference, Plaintiff filed her "Objection to Answering Further Questions Posed by Defendants," dated December 18, 2019, which contains a partial Opposition to Defendants' Motion to Compel, and reiterates that Defendants failed to timely respond to her discovery requests and provided falsified and/or forged documents.[19] During the January 6th conference, Plaintiff stated that she had responded to Defendants' discovery requests; Defendants' responses to her requests were still deficient because falsified or incomplete; that the parties could not reach an agreement on discovery; and that Plaintiff refused to participate any further in discovery until the Second Motion to Compel was ruled on.[20]  In light of Plaintiff's *pro se* status, Plaintiff's stated refusal to participate in discovery until her Second Motion to Compel was ruled on, and the parties' *impasse* in resolving any of their discovery issues, the parties were released from participating in further discovery conferences.[21]  Plaintiff's Second Motion was taken under

---

[17] The fact discovery deadline was originally December 13, 2019 (R. Doc. 32), but in light of the parties' discovery issues, the production of additional information by Defendants in November, and Plaintiff's requests to resume discovery discussions at the courthouse on January 6, 2020, discovery was permitted to continue in anticipation of an amended scheduling order.  *See* R. Doc. 52, pp. 4-5.

[18] R. Doc. 63.  Plaintiff filed a letter dated January 2, 2020 requesting a continuance of the January 6, 2020 conference in light of her Second Motion to Compel; however, the request for the continuance, which was not captioned as a motion, was not received by the Clerk's office until January 6, 2020. *See* R. Doc. 64.  In any event, Plaintiff appeared for the conference, which rendered her request for a continuance moot.  *See* R. Doc. 72.

[19] R. Doc. 63.  Plaintiff also reiterated her request for certain documents raised in the Second Motion to Compel, discussed below (*e.g.*, Defendants' social security cards, driver's licenses, and birth certificates).

[20] R. Doc. 65.

[21] Several discovery-related issues were discussed with Plaintiff at the January 6th conference, including that defense counsel has an ethical obligation to produce unaltered documents and is subject to sanctions if not; that allegations of forged documents are properly raised at later stages of the proceeding; that Plaintiff is not automatically entitled to production of the same things from Defendants that Defendants request from her, but rather, the documents requested by all parties must be relevant to the case; and that Defendants are not required to produce information that is not in their possession, custody, or control.  R. Doc. 65. A number of other issues were also discussed, namely:  that the district judge's initials are no longer on the case caption because of the parties' consent to the undersigned's jurisdiction; that Plaintiff cannot give documents that she wants considered directly to the Court, but rather must file them in the Clerk's office; and that the Clerk's office employees are not tampering with Plaintiff's filings.  The latter allegation apparently stems from Plaintiff's belief that her damages are stated to be $40,000 on the docket sheet. Plaintiff quantified her damages as $40,000 on the civil cover sheet (*see* R. Doc. 1-2), which is presumably where the information came from.  Plaintiff was also notified of how she could raise her complaints regarding the undersigned and the Clerk's office with the Chief District Judge, and further advised that the information summarized on the docket sheet is not determinative of the damages she may recover in this case.

advisement, despite that it had been prematurely filed.[22]  Defendants were permitted to file their

opposition and re-urge their motion to compel.[23]

## II.  Law and Analysis

### A.  Legal Standard

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense[24] and proportional to the needs

of the case, considering the importance of the issues at stake in the action, the amount in controversy,

the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit.[25]  Courts must additionally limit the frequency or extent of discovery if:

"(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some

other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking

discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the

proposed discovery is outside the scope permitted by Rule 26(b)(1)."[26]

Rule 33 of the Federal Rules of Civil Procedure provides:

(1) Number. Unless otherwise stipulated or ordered by the court, a party may serve
on any other party no more than 25 written interrogatories, including all discrete
subparts. Leave to serve additional interrogatories may be granted to the extent
consistent with Rule 26(b)(1) and (2).

(2) Scope. An interrogatory may relate to any matter that may be inquired into under
Rule 26(b). An interrogatory is not objectionable merely because it asks for an
opinion or contention that relates to fact or the application of law to fact, but the
court may order that the interrogatory need not be answered until designated
discovery is complete, or until a pretrial conference or some other time.

---

[22] R. Doc. 65, p. 3.

[23] R. Docs. 65, 66.

[24] *Crosby v. Louisiana Health Service and Indem. Co.,* 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'"), *citing* Fed. R. Civ. P. 26(b)(1) and *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

[25] Fed. R. Civ. P. 26(b)(1).

[26] Fed. R. Civ. P. 26(b)(2)(C).

Each interrogatory must be answered by the party to whom it is directed, and each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.[27]

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible things:

> (a) In General. A party may serve on any other party a request within the scope of Rule 26(b):
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
> (A) any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form….

Under these rules, a party has 30 days after service of discovery to respond or object in writing to the interrogatories or requests for production.[28] If a party fails to respond fully to an interrogatory or request for production in the time allowed by Fed. R. Civ. P. 33(b)(2) or Fed. R. Civ. P. 34(b)(2)(A), the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."[29] "Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections."[30] "A party objecting to discovery 'must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[31]

---

[27] Fed. R. Civ. P. 33(b)(1)(A) and (b)(3).

[28] Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A).

[29] Fed. R. Civ. P. 37(a)(4).

[30] *Vasquez v. Conquest Completion Services, LLC*, No. 15-188, 2018 WL 3611891, at *2 (W.D. Tex. Jan. 10, 2018), *citing Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (*citing McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

[31] *Vasquez*, 2018 WL 3611891 at *2, *citing Cheshire*, 2015 WL 7736649 at *4 (*quoting Reyes v. Red Gold, Inc.*, No. 05-191, 2006 WL 2729412, at *1 (S.D. Tex. Sept. 25, 2006)).

### B. Plaintiff's Second Motion to Compel

Plaintiff's Second Motion to Compel expressly seeks to compel production of the following:[32],[33] (1) from Willis: a birth certificate from Vital Records, marriage license(s), a Social Security card, a Louisiana driver's license or identification card from the Department of Motor Vehicles on Independence Boulevard in Baton Rouge, all information on file at the Orleans Parish District Attorney's office regarding Willis, and a sworn statement by Willis regarding her identity and changes thereto; (2) copies of Marshall's Social Security card and driver's license from the Department of Motor Vehicles on Independence Boulevard in Baton Rouge; (3) an explanation by Defendants addressing documents Plaintiff contends are forgeries, including Hot Schedule records; (4) a copy of Magnolia Café's Business License; (5) a witness list; (6) witness statements; and (7) the information Plaintiff attempted to subpoena from third parties, which requests are incorporated by reference to the end of Plaintiff's October 31, 2019 letter to the Chief Judge.[34] Additionally, Plaintiff's

---

[32] Plaintiff's Second Motion to Compel also lodges a number of complaints that improperly seek various other forms of relief, *to-wit*: an explanation of how and why Plaintiff's demands in this lawsuit were allegedly changed by the Clerk's Office and why the settlement conference was cancelled; complaints about the termination of Plaintiff's First Motion to Compel; complaints that one of the individual Defendants was not permitted to testify at a conference (although no witness testimony was permitted or needed); for defense counsel and Defendants to be held in contempt and charged with perjury for allegedly misleading the Court (allegations of criminal conduct should be brought to the Office of the U.S. Attorney for the Middle District or other law enforcement officials. *See Areizaga v. ADW Corp.*, No. 14-2899, 2016 WL 3511788, at *10 (N.D. Tex. June 7, 2016), *report and recommendation adopted*, No. 14-2899, 2016 WL 3419097 (N.D. Tex. June 22, 2016) (recognizing that "there is no right to have someone criminally prosecuted, that a civil action does not permit a private party to enforce criminal statutes, and that violations of criminal statutes do not give rise to a private right of action."); for Plaintiff to be able to hand deliver documents directly to the undersigned because the Clerk's Office has allegedly failed to file them; and for two deputy Clerks of Court to be removed because they are allegedly friends of Defendants. *See generally* the Second Motion at R. Docs 59/62, and R. Docs. 70-71, which are letters dated January 7, 2020 and January 18, 2020 but are construed as supplemental supporting memoranda that were received and filed on January 21, 2020 and January 29, 2020, respectively. These complaints are not properly before the Court and will not be considered in the Second Motion to Compel, although many of them have already been discussed with Plaintiff multiple times.

[33] Plaintiff's request for a video-recorded hearing to be set for January 3, 2020 on the instant Motion is now moot, but in any case, the setting of hearings is up to the Court's discretion. A hearing is not necessary for the resolution of these motions. *See* Local Rule 78. Plaintiff's multiple requests for recusal of the undersigned has already been ruled upon. R. Docs. 70-71 and *see* R. Doc. 61. Plaintiff's request for Defendants' to respond under Oath to her discovery requests and/or to her Second Motion to Compel is the subject of Plaintiff's Requests for Oaths, which will be ruled on separately. R. Doc. 59/62, pp. 3-4; R. Doc. 70, p. 3; R. Doc. 57.

[34] R. Doc. 59/62, p. 1, in conjunction with p. 4 *and see* R. Doc. 59/62, p. 3 *referencing* the bottom of R. Doc. 46, p. 3.

first supplemental memorandum also requests video surveillance and recordings from Defendants "for the year of 2017."[35]

Discovery requests were not attached to the Second Motion; rather, Plaintiff specifically contends that she sought some of the requested information by letter to Defendants, and that Defendants responded by letter dated December 10, 2019 and refused to produce the information requested regarding Willis.[36]  The documents attached to Plaintiff's proposed pretrial order reflect that on November 28, 2019, Plaintiff sent Defendants the referenced letter, requesting that Defendants produce copies of the individual Defendants' driver's licenses and Social Security cards, Magnolia Café's business license, a witness list, and the recordings or video surveillance that were requested by subpoena.[37]  Plaintiff's first supplemental memorandum clarifies that the requests were sent via the November 28, 2019 letter and reiterates Plaintiff's requests for Willis' records.[38]  *See also* Plaintiff's December 18, 2019 Objection, which also requests the individual Defendants' Social Security cards, driver's licenses and birth certificates, and information regarding Willis on file at the Orleans Parish District Attorney's Office.[39]  Further, one of the documents attached to Plaintiff's December 2, 2019 Objection to Defendants' discovery requests contains a subpoena directed to Willis dated December 9, 2019, seeking the same information Plaintiff currently seeks to compel regarding Willis.[40]

Plaintiff's requests suffer from a number of procedural defects.  The December 2019 subpoena to Willis contains no service information, so it is unclear if it was properly served on Willis and if

---

[35] R. Doc. 70, p. 2.  The first supplemental memorandum also requests "all phone calls" from defense counsel to Plaintiff's phone number.  *Id.*  However, this information was not made the subject of Plaintiff's November 28, 2019 letter requesting discovery, so the information is not properly the subject of the Second Motion to Compel.

[36] R. Doc. 59/62, p. 1.  Defendants' alleged letter is not in the record.

[37] R. Doc. 55-1, p. 27.  This letter was not attached to Plaintiff's Second Motion to Compel or supplemental memoranda/oppositions.  Furthermore, this letter is the only letter found in the record directed *to defense counsel* requesting the referenced information.

[38] R. Doc. 70, p. 2.

[39] R. Doc. 63, p. 2.

[40] R. Doc. 58-1, p. 30.  This subpoena was also not attached to Plaintiff's Second Motion to Compel or supplemental memoranda/oppositions.

Plaintiff provided advance notice of the subpoena to Defendants in compliance with Fed. R. Civ. P. 45.[41]  Furthermore, Plaintiff's discovery requests underlying the Second Motion to Compel were not properly propounded, as they were submitted to counsel via letter and not by one of the permitted forms of discovery authorized by the Federal Rules of Civil Procedure.  Plaintiff is aware of the permitted forms of discovery because she propounded a set of properly labeled and numbered Interrogatories to Defendants in September 2019.  There is also no indication that the parties participated in a Fed. R. Civ. P. 37 conference to attempt to amicably resolve this dispute prior to Plaintiff's filing.  Nevertheless, in light of Plaintiff's *pro se* status, the Court will consider Plaintiff's November 28, 2019 letter to defense counsel[42] to contain the second set of discovery requests upon which her Second Motion to Compel is premised.[43]  While Defendants did not submit formal responses and objections to the second requests (presumably because they were not properly propounded), Defendants addressed the requests in their opposition memorandum.  Accordingly, each request sought to be compelled, liberally gleaned from Plaintiff's Second Motion to Compel and supplemental memoranda, is addressed as follows.

### 1.  *Information regarding Willis*

Plaintiff's November 28, 2019 letter seeks Willis' birth, Social Security, marriage, and driver's license information.[44]  At the January 6, 2020 conference, Plaintiff indicated that she seeks this information because she wants to confirm that the person who has answered and is participating in this lawsuit is the same person associated with Magnolia Café. The reason for Plaintiff's confusion apparently stems from changes to Willis' name, as Plaintiff knows Willis' name to be "Skye Willis," but Willis' full name has been represented during the course of these proceedings as "Virginia Skye

---

[41] Defendants' Opposition does not address the December 2019 subpoena to Willis.

[42] R. Doc. 55-1, p. 27.

[43] R. Doc. 59/62, p. 1.  The November 28, 2019 letter requests an item that is not raised in the Second Motion to Compel, *i.e.*, records for Daniel.

[44] R. Doc. 55-1, p. 27; R. Doc. 59/62, p. 1 *and see* R. Doc. 63, p. 2 and R. Doc. 70, p. 2.

Walters Willis."[45]  Plaintiff also contends that Willis' signature appears to be different on some of the records produced.  Defendants stated during the conference that they attempted to address this issue with Plaintiff, to no avail.  In their opposition memorandum, Defendants generally contend that the information sought is irrelevant to Plaintiff's claims of race discrimination.[46]

While Plaintiff's Second Motion to Compel and supplemental memoranda seek production of Willis's birth certificate and alleged information regarding Willis on file at the Orleans Parish District Attorney's Office, these requests were not made in Plaintiff's November 28, 2019 letter; therefore, they are not properly sought via the Second Motion to Compel.  Furthermore, Defendants contend that they are not in possession of information from the Orleans Parish District Attorney,[47] and the request for this information, to the extent it exists, should be made directly to the Orleans Parish District Attorney's office.  The Second Motion to Compel is denied as to the request for this information.  Production of the remaining information sought, *i.e.*, Willis' Social Security card, marriage license, and driver's license, is not necessary to resolve Plaintiff's requests for an explanation for the changes to Willis' name because Plaintiff has proposed an alternative that is responsive to her concerns.  Specifically, Plaintiff also requested a sworn statement by Willis, whereby Willis identifies and explains all changes to her name.[48]  Production of both the underlying documents and the statement is duplicative and unnecessary.  A signed affidavit by Willis explaining and attesting to all changes to her name[49] will resolve Plaintiff's concerns as to Willis' identity.  Defendants shall produce the affidavit to Plaintiff by no later than October 15, 2020.  Plaintiff's request to compel production of the underlying records is otherwise denied.[50]

---

[45] R. Doc. 67-2, p. 5.
[46] R. Doc. 67, p. 6.
[47] R. Doc. 67, p. 9.
[48] R. Doc. 59/62, p. 4.
[49] Willis has already admitted she is an officer and consultant of Magnolia Café.  R. Doc. 67-2, p. 8 and R. Doc. 7, p. 1, ¶ 3.
[50] To the extent Plaintiff requests that information be produced from certain locations of state agencies, *i.e.*, the Department of Motor Vehicles on Independence Boulevard, such requests are improper because Plaintiff cannot require Defendants to obtain documents from particular places for production to her.  Further, while Plaintiff's Social Security

### 2.   *Information regarding Marshall*

Plaintiff seeks to compel Marshall's Social Security card and driver's license,[51] which was requested in Plaintiff's November 28, 2019 letter/second set of discovery requests.[52] Fed. R. Civ. P. 26(b)(1) provides that "Parties may obtain discovery regarding any non-privileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case…."[53] Plaintiff has not provided a basis for why this information is relevant to her claims. Marshall has answered and admitted she is the owner of Magnolia Café.[54] Plaintiff has not argued that there is an identity-related issue as to Marshall, like the one articulated with respect to Willis. Therefore, Plaintiff's Second Motion is denied with respect to this request.

### 3.   *Explanations for forgeries*

Plaintiff's Second Motion to Compel also requests an explanation from Defendants as to alleged forgeries or alterations to the documents Defendants voluntarily produced in response to Plaintiff's third-party subpoenas directed to non-parties, *i.e.*, Hot Schedules records, bank/check records, and payroll information.[55] However, this information was not expressly sought in Plaintiff's second set of discovery requests, and even if it had been, it is not a proper discovery request directed to Defendants. As explained to Plaintiff during prior Court conferences, if Plaintiff believes that the documents produced have been altered or forged, she can retain an expert to prove this allegation. In any case, Plaintiff's requests for explanations as to forgeries on documents produced by Defendants

---

card and driver's license number may be subject to production to Defendants (to be used, for example, on authorizations or subpoenas seeking Plaintiff's medical or tax information), it was explained to Plaintiff that does not automatically mean that the individual Defendants must produce such documents to Plaintiff. First, those documents for Defendants may not be relevant to any issues in the case. Second, to the extent there appears to be a basis to question any Defendant's identity which might make those documents relevant as to Willis, Plaintiff has proposed an acceptable substitute in the form of a sworn statement for Willis.

[51] R. Doc. 59/62, p. 4. *See also* R. Doc. 63, p. 2.

[52] R. Doc. 55-1, p. 27.

[53] *Dean v. Shell Pipeline Co., LP*, No. 19-137, 2020 WL 2813521, at *2 (M.D. La. May 29, 2020). *See Dumas v. O'Reilly Automotive Stores, Inc.*, No. 16-262, 2017 WL 2573956, at *2 (M.D. La. June 14, 2017) ("A determination of relevancy is tied to applicable substantive law and then weighed against the six proportionality factors. Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality.")

[54] R. Doc. 7, ¶ 3.

[55] R. Doc. 59/62, p. 1.

is related to her requests for statements from Defendants, swearing that these same documents are not forged, which is discussed below.

        4.     ***Magnolia Café's Business License for 2017***

Plaintiff seeks to compel Magnolia Café's "business license" from the Secretary of State for the year 2017, which was requested in Interrogatory No. 1 of her First Set of Interrogatories.[56] Defendants responded that they are not in possession of a "business license," and contend that "business licenses" are not issued by the Secretary of State.   However, Defendants produced a print-out of their registration statement from the Louisiana Secretary of State website, which contains information regarding the ownership of the business.[57]   As Defendants have produced responsive information and have stated that they do not have anything else to produce in response, this request is satisfied.

        **5.**     ***Defendants' witness list***

Plaintiff's second set of discovery requests that Defendants produce a witness list.[58]   In Plaintiff's Notice of Exhibits, Plaintiff filed a copy of a draft joint status report prepared by Defendants, which states that Defendants' Fed. R. Civ. P. 26(f) disclosures served on Plaintiff contained a witness list.[59]   Therefore, this request appears to be satisfied.   If Defendants have amended their witness list since serving their disclosures, they must provide an amended witness list to Plaintiff by no later than October 15, 2020.   Defendants will also have an ongoing duty to supplement this information.[60]

---

[56] R. Doc. 40, p. 1; R. Doc. 59/62, p. 1.

[57] R. Doc. 67, pp. 5, 8-9; R. Doc. 67-2, pp. 6, 21-22.

[58] R. Doc. 55-1, p. 27.

[59] R. Doc. 54, pp. 1, 6.  The witness list is not in the record.

[60] Fed. R. Civ. Proc. 26(e).  All parties will also be required to provide a list of witnesses they intend to call at trial in the pretrial order.  *See* R. Doc. 33, p. 2 (Pretrial Order Requirements).

**6.    *Witness statements***

The Second Motion to Compel seeks "sworn statements as requested,"[61] but it is unclear what witness statements Plaintiff seeks to compel.  Review of the record reflects that Interrogatory No. 2 and No. 3 in Plaintiff's First Set of Interrogatories request "a sworn statement [apparently by Willis, Marshall, and Daniel] that the copies of payroll checks [that] are signed by Mr. Roland Barber presented to Stacey Williams" during the March 14, 2019 conference by Defendants "are accurate and have not been forged for the year 2017," and for Defendants to "Swear under oath that the documents provided to Stacey Williams/Plaintiff are true regarding all managers pay is true and method of pay is correct and not falsified," respectively.[62]  Plaintiff's requests for Defendants to give a sworn statement and/or oath attesting to the accuracy and genuineness of a third party's signature are not requests properly made to Defendants via interrogatory, but rather, should be posed to an expert and/or should be posed during an oral deposition of the signatory to the documents in question. To the extent that Plaintiff seeks confirmation that the documents that Defendants have produced were not tampered with by Defendants prior to production, *i.e.*, are true and accurate copies, Willis' verification of the responses and defense counsel's signature on the responses[63] are sufficient to address Plaintiff's concerns.   That said, Defendants' responses to Plaintiff's First Set of Interrogatories, which were attested to by Willis, individually and as Defendants' representative, and notarized by counsel, state that all of the payroll check copies bearing Barber's signature are accurate and have not been forged, and also aver that "all documents provided to Stacey Williams regarding the rate of pay of Managers are genuine, and the method of payment calculation is correct and not falsified."[64]  Accordingly, these requests appear to be satisfied.

---

[61] R. Doc. 59/62, p. 1.
[62] R. Doc. 40, pp. 1-2.
[63] *See, e.g.*, Fed. R. Civ. P. 11.
[64] R. Doc. 67-2, p. 6.

13

### 7.     *Information requested in third party subpoenas*

As discussed above, Plaintiff seeks to compel the production of information purportedly subpoenaed from The Bank of St. Francisville, the Louisiana Department of Revenue, and Hot Schedules, Inc.[65]  Defendants object to these requests because they were not properly served on the third-parties and were not sought via properly-propounded requests for production to Defendants.[66]  Even so, Defendants contend that they voluntarily produced a good deal of the payroll information sought, bank records sought from the Bank of St. Francisville, form W-2s sought from the Louisiana Department of Revenue, and records and logbooks sought from Hot Schedules, Inc., despite not being given advance notice of the subpoenas, and prior to service of any discovery requests from Plaintiff or the Second Motion to Compel.[67]

According to Plaintiff and one U.S. Postal Service "green card," Plaintiff's subpoenas to the third-party entities were all sent via certified mail[68] and Defendants stated during the conferences with the Court that they never received advance notice of the subpoenas as required by Fed. R. Civ. P. 45, which Plaintiff did not dispute.  Review of the record reflects that some of the subpoenas contain requests that are overly broad (*e.g*., seeking 5 years of rates of pay and pay stubs in the Marshall and Daniels' subpoenas, seeking 5 years of Magnolia Café's cancelled checks, deposits, and employee payroll from the Bank of St. Francisville) in light of the length of Plaintiff's 6 to 7-month term of employment.  Further, the subpoena to Hot Schedules is procedurally improper because it

---

[65] R. Doc. 59/62, p. 3 (referencing the information sought at the bottom of R. Doc. 46, p. 3).

[66] R. Doc. 67, p. 1.

[67] *See* R. Doc. 67, pp. 1-5, wherein Defendants contend that they produced 3 years of payroll summaries and 5 months of payroll details reports for 9 employees, then supplemented with 2 years of payroll details reports for 10 employees;  2017 W-2s for 11 employees; 10 months of bank statements for 2017; logbook reports with employee evaluations for 18 employees; text messages between Plaintiff and Daniel; and additional Hot Schedule reports and daily logs. *See also* R. Doc. 67-2, pp. 23-79 (Hot Schedules logs 12/22/16 through 9/17/17); and R. Doc. 55-1, (exhibit attached to Plaintiff's proposed pretrial order which contains copies of checks, W-2's, and Hot Schedule logs).  Defendants also contend that they proactively produced Magnolia Café's 2017 financial statements, which are not in the record.  R. Doc. 67, p. 3.

[68] R. Doc. 55-1, pp. 67-71; R. Doc. 55-1, pp. 18-20.

requires production of documents at this Court, which is located more than 100 miles from Hot Schedules' San Antonio, Texas address.[69]

To the extent Plaintiff seeks to compel *Defendants* (rather than third parties) to produce information in response to the third-party subpoenas, the request is improper and denied. To the extent Plaintiff propounded a subpoena to Magnolia Café (through Daniel or anyone else) or the other Defendants for this same information, these subpoenas are not compliant with, at least, Fed. R. Civ. P. 45(a)(4).[70] In any case, Plaintiff obtained much of the information requested in the subpoenas directly from Defendants, according to Defendants' opposition memorandum and responses to discovery,[71] as well as Plaintiff's filings herein, which contain copies of Magnolia Café vendor and payroll checks, payroll information, pages of Hot Schedules log book records, and Willis' W-2.[72] Further, to the extent Plaintiff believes she needs additional information, the parties will be given a short time to conduct additional discovery in this case through the issuance of an amended scheduling order.

---

[69] *Texas Keystone, Inc. v. Prime Natural Resources, Inc.,* 694 F.3d 548, 554 (5th Cir. 2012) (holding that, under Rule 45 of the Federal Rules of Civil Procedure, "a court may quash or modify a subpoena if [the subpoena] (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden," *citing Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004) (*citing* Fed. R. Civ. P. 45(c)(3))).

[70] Rule 45(a)(4) states: "If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." *See Davis v. Fourth Circuit Court of Appeal,* No. 15-4169, 2016 WL 3970995, at *2 (E.D. La. July 25, 2016) (quashing subpoenas defendants propounded on third parties that were mailed to the incorrect address of the plaintiff, who did not receive notice of them until after they were served on the third parties, and was not served with notice in advance as required by Fed. R. Civ. P. 45(a)(4)). Plaintiff does not contest that she did not provide notice of the subpoenas prior to service.

[71] *See* R. Doc. 67-2, pp. 5-20. Therein, Defendants provided employee and manager rates of pay, explanations for the differences thereof, and the reasons for employee separations.

[72] R. Doc. 16-1, pp. 35-38 (Plaintiff's payroll information); R. Doc. 54, pp. 14-17 (Hot Schedule records) and pp. 18-23, 41-48 (employee payroll information); R. Doc. 55-1, pp. 5, 12, 33-64, 65-66, 72-75 (Magnolia Café checks, a Hot Schedule record, and W-2); R. Doc. 56, pp. 3-28 (payroll checks to Plaintiff); R. Doc. 58, pp. 25-26 (Hot Schedules records) and p. 59 (Magnolia Café checks). *And see* R. Doc. 67-2, Defendants' production to Plaintiff containing Hot Schedules records.

**8.**     *Video surveillance and recordings for 2017*

The first supplemental memorandum in support of Plaintiff's Second Motion to Compel seeks production of video footage/surveillance and recordings from Magnolia Café for the year 2017.[73] Interrogatory No. 5 of Plaintiff's First Set of Discovery Requests seeks "all recordings from September 26, 2017." Interrogatory No. 5 also references the subpoenas served on Willis and Marshall in February 2019, which Plaintiff claimed also sought production of "all recordings from September 26, 2017."[74] The record reflects that the February 2019 subpoena to Marshall does not request video recordings or surveillance and the February 2019 subpoena allegedly served on Willis is not in the record.[75] Defendants objected to the improper service of the subpoenas and the overbreadth and ambiguity of the request, but ultimately responded in a verified Interrogatory response that, to the extent the request sought video recordings, "there are no video recordings to produce."[76] As Defendants have responded that they do not have responsive recordings, this request is satisfied.[77,78]

---

[73] R. Doc. 70, p. 2.

[74] R. Doc. 40, p. 2.

[75] R. Doc. 16-1, p. 19. Only the return of service on Willis is in the record. R. Doc. 16-1, p. 24. The December 2019 subpoena directed to Willis is at R. Doc. 58-1, p. 30, but it does not seek video surveillance or recordings and, as mentioned, it is not clear that it was properly served.

[76] R. Doc. 67-1, pp. 8, 20.

[77] Plaintiff's November 28, 2019 letter/second set of discovery requests does not expressly seek to compel production of any of the other information requested by Plaintiff's September 2019 First Set of Discovery Requests, but the record reflects that Defendants either responded to all information sought in the first set of requests, despite that the requests far exceeded twenty-five in number due to the subparts, or lodged reasonable objections. Defendants also produced employee payroll summary and detail information, Hot Schedules information, Magnolia Café's financial statements and bank records, and text messages to Plaintiff, *prior to* the receipt of discovery requests from Plaintiff. *See* R. Docs. 67 and 67-2, and the footnote *above* describing Defendants' production to Plaintiff.

[78] In a number of her filings, Plaintiff contends that Defendants' responses to her First Set of Discovery Requests, which Plaintiff electronically filed in the record on September 19, 2019, were untimely, for which she seeks unspecified relief. However, Defendants contend that they did not learn of Plaintiff's discovery requests via the electronic filing and Plaintiff did not serve them via another method pursuant to Fed. R. Civ. P. 5(b)(2); rather, they learned from Plaintiff via a faxed letter on October 21, 2019 that Plaintiff had electronically filed them. Defendants then served their responses on Plaintiff thirty days later, on November 20, 2019. R. Doc. 40; R. Doc. 67, p. 1 and R. Doc. 67-2, *and see*, in particular, p. 20. In light of Defendants' representation that they did not receive the requests via Plaintiff's electronic filing, but then served their responses 30 days after learning that they had been electronically filed, the Court finds that Defendants' responses were served sufficiently timely on Plaintiff. *See* Fed. R. Civ. 5(b)(2)(E) and Local Rule 5(a) and (f), which generally permit electronic service of filed pleadings and papers (after the complaint) on registered users of the CM/ECF system. However, Fed. R. Civ. P. 5(b)(2)(E) also specifically provides that such service "is not effective if the filer or sender learns that it did not reach the person to be served…." Furthermore, discovery requests are not generally permitted to be filed into the record until they are used in the proceeding pursuant to Fed. R. Civ. P. 5(d)(1)(A).

### C.  Defendants' Second Motion to Compel

At the January 6, 2020 discovery conference, Defendants contend that the parties made no progress and were unable to resolve any discovery issues because Plaintiff refused to discuss discovery matters, would not produce further responses, and attempted to leave the courtroom just prior to the arrival of the undersigned.[79]   Thus, Defendants filed their Second Motion to Compel, as permitted, which tracks their First Motion to Compel and seeks to compel responses to the same discovery requests, discussed *below*.[80] Defendants seek an award of their costs and attorney's fees incurred in bringing the Second Motion as sanctions against Plaintiff for her refusal to provide complete responses.[81]

In response,[82] Plaintiff generally contends that she timely served her responses on September 19, 2019;[83] that defense counsel misrepresents that he has not been able to reach Plaintiff;[84] and that she objects to "further answering of questions" posed by Defendants because the requests were answered to the best of her ability.[85]   Plaintiff also stated that she advised Defendants that she required more time to answer Interrogatories No. 13 through No. 15.[86]

---

[79] R. Doc. 66, pp. 3-4.  The conference report of the January 6, 2020 conference also reflects that, although that the parties were informed that the purpose of their attendance was to attempt resolve discovery issues, Plaintiff advised the Court that she refused to participate any further in discovery until her Second Motion to Compel is resolved.  R. Doc. 65, pp. 1-2.

[80] *Compare* R. Doc. 48-3, pp. 2-3 *with* R. Doc. 66-2, pp. 2-3, *and see* R. Doc. 65, p. 3.

[81] R. Doc. 66, pp. 4-5 seeking costs, fees, and sanctions deemed appropriate, *but see* R. Doc. 66-2, p. 3, where Defendants clarify that the costs and fees sought are the requested sanction.

[82] Plaintiff did not file an "opposition" to Defendants' Second Motion, but Plaintiff has responded to Defendants' Second Motion in various filings, which the Court will consider in light of Plaintiff's *pro se* status.  *See, e.g.,* R. Docs. 58, 63, 70-71.  Some of these filings pre-date Defendants' Second Motion but that is because Defendants' Second Motion seeks to compel production of the same information sought to be compelled by Defendants' First Motion.

[83] *See, e.g.,* R. Doc. 46.

[84] R. Doc. 70, pp. 1-2.

[85] R. Doc. 63, p. 1 and R. Doc. 58, p. 1, wherein Plaintiff objects to any questions asked by Defendants regarding her responses.

[86] *See, e.g.,* R. Doc. 40-1, p. 4.  Plaintiff also takes issue with Defendants' Motion to Compel because, according to Plaintiff, Defendants' responses to her discovery were untimely and Plaintiff has not received responses to her subpoenas. R. Doc. 63, p. 1; R. Doc. 58, p. 1; R. Doc. 70, pp. 1-2; R. Doc. 71, p. 1.  These issues are addressed, above, in connection with Plaintiff's Second Motion to Compel.

In Interrogatory No. 2, Defendants seek details regarding Plaintiff's prior claim(s) of discrimination in connection with previous employment.[87] Plaintiff responded "see EEOC Documents etc."[88] Plaintiff produced EEOC documents related to her employment with Magnolia Café that are scattered throughout various filings (which do not appear responsive to this request), but according to Defendants, did not produce any documents directly in response to any of their discovery requests.[89] Fed. R. Civ. P. 33(d) provides:

> If the answer to an interrogatory may be determined by examining… a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could and  (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.[90]

Plaintiff's response is deficient because Plaintiff did not specify the EEOC records to be reviewed or provide the EEOC documents she referenced in the response to Defendants.  Plaintiff cannot merely rely on the EEOC records scattered throughout her filings (which, as noted, do not appear responsive to this Interrogatory).  Rather, by no later than October 15, 2020, Plaintiff must either directly respond Interrogatory No. 2 and its subparts (a)-(d), or, if Plaintiff chooses to rely on EEOC records in response to some or all of the request, she must specify the EEOC records to which she refers (by date, topic, author, *etc.*), and permit Defendants to either examine those records or produce the referenced EEOC records to Defendants in an organized and labelled manner.  Plaintiff must also provide *verified* responses to all of her Interrogatories as required by Fed. R. Civ. P. 33.

Defendants contend that Plaintiff has not fully responded to Interrogatories No. 3 and No. 4 with details of her employment history (*i.e.*, employer addresses, job description, and monthly and

---

[87] R. Doc. 66-2, p. 2; R. Doc. 66-3, p. 2.  Claims of past discrimination have been held relevant and discoverable. *Williams v. United States Environmental Services, LLC,* No. 5-168, 2016 WL 684607, at *8 (M.D. La. Feb. 18, 2016).

[88] R. Doc. 66-3, p. 16.

[89] R. Doc. 66-2, p. 3.

[90] *See Janko v. Fresh Market, Inc.,* No. 13-648, 2015 WL 4656694, at *2 (M.D. La. Aug. 5, 2015).

annual wages) and total yearly earnings for the past five years.[91] Plaintiff provided information as to some of her past employment (dating well before the 5 year requested time period), but Defendants contend that the responses do not provide all of the information requested, or they object that some of the information, including her past wages/earnings, is "irrelevant" or is in the possession of Defendants.[92]  Requests for a Title VII plaintiff's employment history and wages pre-dating the plaintiff's employment with the defendant employer have been denied in prior cases before the Court,[93] and therefore, Defendants' requests for past employment information and wages pre-dating Plaintiff's employment with Magnolia Café are denied.   However, requests for employment information and wages during Plaintiff's employment with Magnolia Café (April 2017-October 2017)[94]  and thereafter until the present, and total yearly earnings for the years 2017 to present, is discoverable in light of Plaintiff's current claims for damages and the requirement to mitigate damages, if possible.[95]  Furthermore, Plaintiff must still provide this employment history and wage information even if Defendants have some or all of it, as Plaintiff is a party to this case from whom Defendants can seek this information and Plaintiff has not alleged that it would be overly burdensome on her to provide this information.[96] Plaintiff is ordered to supplement her partial response to these

---

[91] R. Doc. 66-2, p. 2; R. Doc. 66-3, p. 2.

[92] R. Doc. 66-3, p. 16.

[93] *Williams v. United States Environmental Services, LLC,* No. 15-168, 2016 WL 684607, at *3 (M.D. La. Feb. 18, 2016) (information regarding Plaintiff's past employers, positions, salaries and reasons for leaving held not relevant to the claims or defenses before the Court, *citing* Fed. R. Civ. P. 26(b)(1) and holding: "This information is likewise not proportional to the needs of the case, which is, 'by all appearances to the court, a fairly routine case alleging individual employment discrimination.' *Perry v. Best Lock Corp.*, 1999 WL 33494858, at *2 (S.D. Ind. Jan. 21, 1999).").

[94] R. Doc. 1-1, p. 1; R. Doc. 40-1, p. 1.

[95] *See Williams,* 2016 WL 684607 at *4 and *6 ("Back pay may be reduced, however, by '[i]nterim earnings or amounts earnable with reasonable diligence by' the employee. 42 U.S.C. § 2000e-5(g)(1). First, Plaintiff's rate of pay at her current job is obviously relevant and discoverable evidence of 'interim earnings,' which may warrant a reduction of back pay. Second, an employer may defend against and reduce an award of back pay by showing the employee failed to mitigate his or her damages.").

[96] *See, e.g., Areizaga v. ADW Corporation,* 314 F.R.D. 428, 437 (N.D. Tex. April 4, 2016): "Plaintiff's repeated objection to certain requests for production that the information that Defendant seeks is 'in the custody, possession and control of defendant [or a third party]' or is 'easily accessible through other means' is unsupported. Plaintiff is a party—not a third party or stranger to this litigation—and, as a general matter, is a proper source from which Defendant can seek discovery of documents and ESI in the first instance. Plaintiff's conclusory objections provide no basis for ADW or the Court to know what responsive documents he has in his possession, custody, or control that he is withholding or that he contends that he should not be required to produce because ADW either already possesses (or has custody of or control over) the document or ESI or can more easily obtain it from another source. And Defendant is entitled to ask interrogatories to

Interrogatories, by no later than October 15, 2020, with her Magnolia Café and post-Magnolia Café employment history and wages with the details requested in Interrogatory No. 3, and total yearly earnings for 2017 to present. If Plaintiff does not know some or all of this information, she must provide the information to the extent that she knows it and state the information that is unknown.[97]

Interrogatories No. 5 and 10 are standard requests for the names and contact information of witnesses and persons with factual knowledge and summaries of their purported knowledge,[98] and the names and contact information of potential fact and expert witnesses.[99] Similarly, Interrogatory No. 12 seeks the names and contact information for Plaintiff's family members who have factual knowledge, including knowledge of Plaintiff's alleged damages.[100] Plaintiff partially responded with the names of six facts witnesses, although she anticipates naming more, but contends that she does not have all of the witnesses' addresses and telephone numbers because she has subpoenaed that information from Defendants and has not received a response, and also requires additional time to respond. With respect to expert witnesses, Plaintiff responded (to Interrogatory No. 11) that she needs an expert but that she had until the then-expert deadline of December 2019 to identify one.[101] With respect to family members, Plaintiff only provided the names of two people.[102]

Plaintiff's partial response does not provide the requested summaries or the contact information for any of the witnesses listed, including for family members whose information is

---

ascertain Plaintiff's understanding of his claims and the facts that support them as well as facts that would be most readily known to Plaintiff. Plaintiff has failed to meet his burden to show, and the Court does not find any basis to rule, that Defendant could obtain the information, documents, and ESI that it seeks from some other source that is more convenient, less burdensome, or less expensive." *See also Alex v. KHG Of San Antonio, L.L.C.,* No. 13-728, 2014 WL 12489735, at *5 (W.D. Tex. Aug. 6, 2014, ("[S]imply because information might be obtained from defendant's own records or employees does not establish defendant cannot ask each plaintiff to produce information in that plaintiff's possession, custody or control about work schedules, hours worked, or employment by defendant).

[97] *See, e.g., Janko,* 2015 WL 4656694, at *7.

[98] Plaintiff is also required by Fed. R. Civ. P. 26 to provide this information to Defendants as part of her initial disclosures.

[99] R. Doc. 66-2, p. 2; R. Doc. 66-3, pp. 2-4.

[100] R. Doc. 66-2, p. 2; R. Doc. 66-3, p. 4.

[101] R. Doc. 66-3, pp. 16-18.

[102] R. Doc. 66-3, p. 18.

presumably known to Plaintiff.[103]  Furthermore, since Plaintiff's responses were served last September, Plaintiff has had additional time to gather the requested information.[104]  Pursuant to Fed. R. Civ. P. 26(e), all parties have a duty to supplement their prior discovery responses if they receive additional responsive information or to amend if their prior responses have become incorrect or incomplete.[105]  Accordingly, by no later than October 15, 2020, Plaintiff shall supplement with a listing of the names and contact information of all persons, including family members, whom she believes have knowledge of the facts at issue and a summary of their knowledge, *and* the names and contact information of fact and expert witness that she expects to call at the trial of this matter.  If she has not retained any experts at this time, Plaintiff shall state that, but will be under a continuing obligation to provide the names once retained.  If she does not have all the requested contact information for each person, she shall so state in response to each person, as applicable and explain what she has done to obtain the information.

Interrogatory No. 9 seeks "the specific details of the claim that you make in the present case alleging …racial discrimination," including names of persons, the place, the time, the date, and the substance of the alleged actions.  Defendants contend that Plaintiff did not provide the requested specifics for time, date, and substance in her response.[106]  However, Plaintiff's response, which is comprised of 4 single-spaced paragraphs spanning 2 pages, identifies the substance of several forms of racial discrimination by specific persons at Magnolia Café during certain years.[107]  Plaintiff's

---

[103] *See Areizaga,* 314 F.R.D. at 437: "[A]s the Fifth Circuit has observed, "[d]iscovery by interrogatory requires candor in responding....The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive." *Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613, 616–17 (5th Cir.1977)."

[104] Plaintiff has also received a large volume of documents from Defendants since serving her responses, which contain check stubs that may contain some of the requested address information.

[105] Fed. R. Civ. P. 26(e), Supplementing Disclosures and Responses, provides: "(1) *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court."

[106] R. Doc. 66-2, p. 2; R. Doc. 66-3, p. 3.

[107] R. Doc. 66-3, pp. 17-18.

response is sufficient but Plaintiff must specify the EEOC records to which she refers in response to Interrogatory No. 2 (by date, topic, author, *etc.*), and permit Defendants to either examine those records or produce the referenced EEOC records to Defendants in an organized and labelled manner, as stated above. Defendants may glean additional details of these claims by deposing Plaintiff.

Interrogatory No. 11 is a standard request for identification or description of Plaintiff's exhibits to be introduced at trial. Defendants contend that Plaintiff's response, which states that Plaintiff needs an expert to testify/provide a statement, and lists non-specific EEOC documents and text messages between Plaintiff and Daniel, and Plaintiff and Charlton Mills, is insufficient.[108] Plaintiff has vaguely identified some documents, but must supplement her response and provide more details regarding the EEOC documents and text messages to which she is referring (date, author, *etc.*) by no later than October 15, 2020 so that Defendants can identify these documents and/or request for them to be produced. Alternatively, Plaintiff can produce the documents referenced in this response to Defendants or permit Defendants to inspect them. Plaintiff must also supplement this response if and when she retains an applicable expert, if that impacts the exhibits she intends to use at trial.

Interrogatory Nos. 13 through No. 15 request for Plaintiff to identify the Magnolia Café records, checks, and payroll history that Plaintiff alleges in her August 19, 2019 Motion to Compel Subpoenas were forged, falsified, and/or were withheld.[109] Plaintiff responded that she only claimed that these records "appeared" forged,[110] *etc.* and asked Defendants to place these requests "on hold," in anticipation of retaining an expert/forensic specialist opinion.[111] As an amended scheduling order resetting the expert discovery deadlines will be forthcoming, Plaintiff shall supplement her responses to these Interrogatories by the amended deadline to provide expert reports, if necessary.

---

[108] R. Doc. 66-2, p. 2; R. Doc. 66-3, p. 4; R. Doc. 66-3, p. 18.
[109] R. Doc. 34; R. Doc. 66-2, p. 3; R. Doc. 66-3, p. 4.
[110] In her Motion to Compel Subpoenas, Plaintiff claimed that the majority of Magnolia Café records produced were "falsified and or withheld," the checks "appear to be forged," and the payroll history was "falsified." R. Doc. 34, p. 1.
[111] R. Doc. 66-3, p. 18.

Defendants contend that Plaintiff completely failed to respond to Interrogatory No. 16 through Interrogatory No. 23 (seeking information about another set of alleged forged documents and details of Plaintiff's employment, *i.e.*, Plaintiff's rate of pay, job duties in different positions, whether and when Plaintiff attended management meetings, whether Plaintiff suffered detrimental changes to her work conditions, and regarding Plaintiff's resignation from her employment).[112] As with Interrogatory Nos. 13 through 15, Plaintiff must supplement her response to Interrogatory No. 16 by the deadline to provide expert reports. Plaintiff shall respond to Interrogatory Nos. 17 through 23 by no later than October 15, 2020.

Request for Production No. 1 seeks production of photographs in Plaintiff's possession concerning "the incident in question, related to your work at Magnolia Café, but not limited to any photographs of the café premises, which may be related to your claim for damages in connection with your claim for alleged discrimination."[113] The verbiage referring to "the incident in question" is vague, and the verbiage referring to "related to your work at Magnolia Café" is overly broad. Plaintiff shall respond to this Request and produce any photographs she has in her possession that may be related to her claims for damages due to discrimination she experienced at Magnolia Cafe, to the extent such photographs are in her possession, custody, or control, by no later than October 15, 2020.[114]

Requests for Production No. 2 through No. 4 seeks documentation Plaintiff will use to substantiate her claims of lost earnings or future lost earnings; five years of tax documents reflecting

---

[112] R. Doc. 66-2, p. 3; R. Doc. 66-3, pp. 4-5.

[113] R. Doc. 66-3, p. 7.

[114] *See Janko*, 2015 WL 4656694, at *6 ("If Fresh Market is not in the possession, custody, or control of [requested] documents, it must say so.") Regarding "possession, custody or control," *see Alex v. KHG Of San Antonio, L.L.C.*, No. 13- 728, 2014 WL 12489735, at *5, n. 50 (W.D. Tex. Aug. 6, 2014): ("The text of Fed. R. Civ. P. 34(a) plainly allows for a request for production of documents within the 'possession, custody, or control' of the party upon whom the request is made. '[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for the purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand.' *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (quoting *In Re Banker's Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (emphasis added), *cert. dismissed*, 517 U.S. 1205, 116 S. Ct. 1711 (1996)). "Control is defined as the legal right to obtain documents upon demand." Id. (citing *United States v. Int'l Union of Petroleum & Indus. Workers, AFL–CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989))."

23

earnings; and five years of employment information reflecting Plaintiff's earnings.[115]  As discussed above, Request for Production No. 3 and No. 4 shall be denied to the extent they seek information prior to Plaintiff's employment with Magnolia Café in 2017.  Plaintiff shall respond to these Requests by no later than October 15, 2020 and produce the documentation she may use to substantiate her claims of lost and future lost earnings, and also produce her tax documents and wage-earning documents from 2017 to the present.  If Plaintiff has no responsive documents, she shall so state.

Request for Production No. 5 is a standard request for trial exhibits, records, *etc.*,[116] and Plaintiff shall respond to this Request and produce the documents and demonstratives she currently intends to use at the trial of this matter by no later than October 15, 2020. If she has no responsive documents, she shall so state, and shall supplement this Response as necessary.[117]

Request for Production No. 6 seeks copies of all payroll checks, earnings information and bank deposits and bank statements during an unspecified period of time, "which includes the period of time you worked at Magnolia Café."[118]  The lack of a temporal restriction renders this Request overly broad, and bank statements may contain private information, including Plaintiff's bank account number. Therefore, Plaintiff shall respond to this Request by no later than October 15, 2020, and produce information showing her Magnolia Café earnings during her time of employment there, including Magnolia Café pay checks and/or pay stubs and bank statements and bank deposits that reflect her Magnolia Café earnings.[119] Defendants shall redact Plaintiff's financial account numbers

---

[115] R. Doc. 66-3, pp. 7-8.  Requests for tax returns and earnings information in employment discrimination cases have been upheld as seeking relevant information where plaintiffs seek lost/unpaid wages.  *See Williams* 2016 WL 684607, at *2. "Because Plaintiff is seeking compensatory damages for lost and unpaid wages, her tax returns are relevant to the litigation. *Butler*, 2008 WL 4059867, at *2 (Numerous courts have recognized 'that tax return information is relevant where a plaintiff has placed the subject of his income/earning capacity at issue in litigation.'). For the same reason, any other documents evidencing Plaintiff's earnings, which are not subject to the same qualified privilege, are likewise relevant and must be produced."  In this case, Plaintiff alleges that she was treated unfairly in her wages. R. Doc. 1, p. 2.

[116] R. Doc. 66-3, p. 8.

[117] All parties will also be required to list exhibits they intend to use at trial in the Pretrial Order.  *See* R. Doc. 33, p. 2 (Pretrial Order Requirements).

[118] R. Doc. 66-3, p. 8.

[119] *See e.g., Alex,* 2014 WL 12489735, at *7 (limiting production of bank statements to the time period encompassing the applicable statute of limitations, *i.e.*, 3 years before the commencement of suit to the date each plaintiff's employment ended).

and any other private information (Social Security number, *etc.*) prior to filing any documents or exhibits containing private information in the record.[120]

    **D.** ==**Fed. R. Civ. P. 37(A)(5)**== **Costs and Fees**

    Defendants seek an award of costs and fees against Plaintiff as a sanction[121] permitted by ==Fed. R. Civ. P. 37(5)(A)==, which provides, in pertinent part:

> (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

In light of Plaintiff's *pro se* and *in forma pauperis* status, the fact that Plaintiff timely filed her initial responses to a majority of the Interrogatories (despite their deficiencies), and the resetting of the deadlines in the scheduling order, an award of costs and fees pursuant to ==Fed. R. Civ. P. 37(5)(A)== would be unjust, and this request is denied without prejudice.[122]  If Plaintiff fails to supplement her responses and/or produce the documents requested, or otherwise fails to participate in discovery or to comply with this Order, necessitating another Motion to Compel, Defendants may re-urge their request for ==Fed. R. Civ. P. 37(5)(A)== costs and fees against Plaintiff.

    Plaintiff is also placed on notice that, if she fails to comply with this Order or otherwise refuses to participate in this proceeding or the discovery process (as she stated she refused to do during the

---

[120] There is no protective order in the record, which would prohibit the disclosure of private or sensitive information.
[121] R. ==Doc. 66-2, p. 3.==
[122] *See Jones v. Steel Fabricators of Monroe LLC*, No. 14-3175, 2015 WL 5676838, at *5 (W.D. La. Sept. 25, 2015), *report and recommendation adopted*, No. 14-3175, 2015 WL 6023143 (W.D. La. Oct. 14, 2015) (granting the defendants' Fed. R. Civ. P. 37 motion to compel the plaintiff to attend his deposition, but denying Fed. R. Civ. P. 37 sanctions as unwarranted at that time in light of the plaintiff's *pro se* status and his current financial hardships, but warning the plaintiff that further failure to attend depositions or failure to comply with court orders would result in sanctions of attorney's fees and costs on the plaintiff.)

January 6, 2020 conference),[123] which includes refusing to participate in her own deposition, she may be sanctioned by this Court pursuant to Fed. R. Civ. P. 37,[124] Fed. R. Civ. P. 41(b),[125] or pursuant to its inherent power to issue sanctions,[126] including but not limited to, dismissal of this action for non-compliance.[127]

### E. Scheduling Order

In light of the supplemental responses and production ordered of both parties as set forth herein, an amended scheduling order re-setting the pretrial and trial dates will be issued.[128]

## III. Conclusion

For the reasons set forth above,

---

[123] R. Doc. 65.

[124] Fed. R. Civ. P. 37 provides for various types of sanctions. *See, in particular,* Fed. R. Civ. P. 37(b)(2)(A): "If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part;(vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

[125] Fed. R. Civ. P. 41(b) provides: "Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits."

[126] *Chambers v. NASCO, Inc.,* 501 U.S. 32, 33 (1991) ("Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them.")

[127] *See Pegues v. PGW Auto Glass, L.L.C.,* 451 F. App'x 417, 418 (5th Cir. 2011) "[A] Rule 37 dismissal is proper if the refusal to cooperate resulted 'from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct.' *FDIC v. Conner,* 20 F.3d 1376, 1380 (5th Cir. 1994) (internal quotation marks and citation omitted). Further, the discovery violation must be attributable to the party himself rather than his attorney. *Id.* In addition, the violation must substantially prejudice the opposing party, and a lesser sanction would not have achieved the desired deterrent effect. *Id.* at 1380–81. 'Deliberate, repeated refusals to comply with discovery orders have been held to justify the use of this ultimate sanction' of dismissal with prejudice. *Bonaventure v. Butler,* 593 F.2d 625, 625–26 (5th Cir.1979) (dismissal of pro se action where plaintiff persistently refused to appear for a deposition)." *See also Pegues* 451 F. App'x 418: "A Rule 41(b) dismissal 'will be affirmed only upon a showing of a clear record of delay or contumacious conduct by the plaintiff, and where lesser sanctions would not serve the best interest of justice.' *Salinas,* 819 F.2d at 106 (internal quotation marks, alterations, and citation omitted)." *See also Jones v. Steel Fabricators of Monroe LLC,* No. 14-3175, 2015 WL 5676838, at *4 (W.D. La. Sept. 25, 2015)*, report and recommendation adopted,* No. 14-3175, 2015 WL 6023143 (W.D. La. Oct. 14, 2015) "If Plaintiff fails to attend his deposition, or fails to make a good faith attempt to answer appropriate questions fully and to the best of his knowledge and ability, the Court will recommend that his case be dismissed. *See Kabbe v. Rotan Mosle, Inc.,* 752 F.2d 1083, 1084 (5th Cir.1985) (where the plaintiff failed to appear for deposition three times, the court granted immediate dismissal of the cause of action with prejudice)."

[128] Plaintiff also complained that the pretrial conference was canceled. R. Doc. 82. The pretrial conference was canceled because of the outstanding discovery motions, as explained in the Notice and Order canceling the conference.

IT IS ORDERED that the Second Motion to Compel,[129] filed by Plaintiff Stacey Williams, is **GRANTED IN PART**, and Defendants shall produce Willis' affidavit and a supplemental or amended witness list, if any, to Plaintiff by no later than **October 15, 2020**.

IT IS FURTHER ORDERED that the Second Motion to Compel,[130] filed by Defendants Magnolia Café, Robin Marshall, Skye Willis and Mary Daniel, is **GRANTED IN PART,** and Plaintiff shall respond to Defendants' discovery requests and produce the information explained above, *i.e.*, Responses to Defendants' Interrogatories No. 2 through 5, No. 10 through 12, and No. 17 through 23, and Responses to Defendants' Requests for Production No. 1 through 6, to Defendants by no later than **October 15, 2020**. Plaintiff must also verify her interrogatory responses under oath as required by Fed. R. Civ. P. 33.

IT IS FURTHER ORDERED that Defendants' request for an award of costs and fees pursuant to Fed. R. Civ. P. 37(5)(A) is **DENIED WITHOUT PREJUDICE** to re-urging, if appropriate. **PLAINTIFF IS ADVISED** that if Plaintiff she fails to comply with this Order or otherwise refuses to participate in this proceeding or the discovery process, she may be sanctioned by this Court pursuant to Fed. R. Civ. P. 37, Fed. R. Civ. P. 41(b), or pursuant to the Court's inherent power to issue sanctions, including but not limited to, dismissal of this action for non-compliance.

IT IS FURTHER ORDERED that an amended scheduling order resetting the pretrial and trial dates will be issued separately.

IT IS FURTHER ORDERED that that the Clerk shall send this Ruling to Plaintiff Stacey Williams at her address listed on PACER by certified mail, return receipt requested.

Signed in Baton Rouge, Louisiana, on September 29, 2020.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[129] R. Docs. 59 and 62.
[130] R. Doc. 66.